## Cressons' Appeal.

A testator gave to his wife in fee a house and lot, " being the value of what I have received of her property," also a house, &c., for life, " with the furniture, horses, carriages, plate, &c." Also an annuity of $4500 for the " support of herself and the board of our children during their minority." The residue " of my estate I give, devise and bequeath to all my children, who shall then be living, to hold to them, their heirs and assigns, equally to be divided among them, share and share alike, as tenants in common, and not as joint tenants, for ever." He appointed his wife guardian of the persons and a friend guardian of the estate of his children. *Held*, upon the whole will, that " then" in the residuary clause referred to the death of the testator, and that children of his children who died in the life of the widow, took what would have been their parents' share of the residue.

January 6th 1874. Before AGNEW, C. J., MERCUR and GORDON, JJ. SHARSWOOD, J., at Nisi Prius.

Appeal from the decree of the Orphans' Court of *Philadelphia*, to January Term 1872, No. 158. In the estate of Caleb Cresson, deceased.

Caleb Cresson died in 1821, leaving to survive him a widow, Sarah Emlen Cresson, and six children, viz.: Caleb Cresson, Jr., Mary Emlen Cresson (afterwards Smith), Emlen Cresson, William P. Cresson, Charles C. Cresson and Annabella C. Cresson (afterwards Wistar).

He left a will dated August 2d 1815, and a codicil dated June 24th 1818; they are as follows:—

" Imprimis. I direct all my just debts to be fully paid and satisfied.

" 2d Item. All that messuage and lot of ground situate on the south side of Chestnut street, between Second and Third streets, from Delaware, now in the tenure of Thomas Greaves, with the appertenances, I give and devise unto my beloved wife, Sarah Emlen Cresson, to hold to her, her heirs and assigns, for ever, subject to the mortgage and ground-rent, as I now hold it, this being about the amount or value of what I have received of her property.

" 3d Item. All that messuage and lot of ground situate on Arch street, between Seventh and Eighth streets, from Delaware, in which we now dwell, with the stable and appertenances, I give and devise to my beloved wife, the said Sarah Emlen Cresson, for and during all the term of her natural life, together with the furniture, utensils, horses, carriages, plate, &c., &c., as they now are and remain, and I direct that no inventory be taken thereof.

" 4th Item. I give and bequeath to my dear wife, the said Sarah Emlen Cresson, one annuity or sum of four thousand five hundred dollars per annum, to be paid quarterly, out of my estate, during all the term of her natural life, for the comfortable support of herself and the board of our children during their minority.

" 5th Item. All the rest, residue and remainder of my estate,

real, personal and mixed, whatsoever and wheresoever, I give, devise and bequeath to all my children who shall then be living, to them, their heirs and assigns, equally to be divided among them, share and share alike, as tenants in common, and not as joint tenants, for ever.

"6th Item. I nominate and appoint my beloved wife guardian of the persons, and my friend, John Cooke, guardian of the estate of my children.

"7th Item. I nominate and appoint my dear wife the said Sarah Emlen Cresson, executrix, and my friend, the said John Cooke, executor of this my will, hereby revoking all wills by me heretofore made, and declare this to be my last will and testament, in my own handwriting. In witness * * *

"Having had some doubts as to the construction that may be placed on the devises and bequests to my dear wife, Sarah Emlen Cresson, in the foregoing will, I have thought it best to add as a codicil thereto, that what is thereby given to her, is in lieu and bar of dower, or any other interest in my estate, hereby confirming my said will in other respects."

John Cooke having died, the widow became the sole executrix of the will.

The residue of his personal estate amounted to $400,000. Two of his children died in the lifetime of the widow, to wit: Caleb Cresson, Jr., leaving one child, Sarah Emlen Cresson; and Annabella C. Wistar, leaving four children, Dillwyn Wistar, C. Cresson Wistar, Emma Wistar, and Bartholomew Wistar. The widow of the testator died March 28th 1870. Most of the estate of the testator had been divided amongst the children by an amicable arrangement whilst all were living.

After the widow's death, her executors settled her account as executrix of her husband. This account was referred to William H. Ruddiman, Esq., as auditor, for adjustment, &c., and to report a distribution of the balance. He reported that the balance for distribution, after deducting costs and expenses of audit, was $28,710.42.

After an elaborate discussion of many authorities, and application of their principles to the will, he concluded:—

* * * "Following the line of reasoning into which he has thus been necessarily conducted, the auditor is of the opinion, that by the words 'all my children who then shall be living,' the testator had reference only to his children who should be living at the death of his widow, and not to the issue of any deceased children; that 'all my children who shall *then be living*,' cannot be made to describe all his children who should be living at the time of his own death; that the estate in remainder did not vest at that period, but upon the happening of that event upon which it was contingent as to the parties who were to take; and that therefore, the children

of Caleb Cresson, Jr., and Annabella C. Wistar, cannot claim any share as belonging to their deceased parents; their said parents not being in the class described as residuary legatees of the testator. The claim made by them is accordingly disallowed.

"The auditor therefore finds in favor of the children of the testator, who were living at the period of the death of their mother, to wit: Mary Emlen Smith, Emlen Cresson, William P. Cresson and Charles C. Cresson; and reports distribution among them in equal proportions, of the balance in the hands of the accountant."

The children of Caleb Cresson, Jr., and Annabella C. Wistar, filed exceptions to the report.

After hearing the exceptions, the Orphans' Court (Peirce, J.) delivered the following opinion:—

* * * "The question which arises under this will is to what period of time do the words in the residuary clause devising and bequeathing the remainder of his estate to all his children 'who shall then be living' refer? There are three periods of time mentioned or referred to in the will to which they may be applicable, viz.:—

"1. The death of the testator.

"2. The termination of the minority of the children.

"3. The death of the widow.

"The auditor has found that the words refer to the last of these events, the death of the widow.

"In reading the will it will be perceived that none of these periods are referred to in express terms, but are only inferable from the use of other terms expressed in the will. Thus the words, 'I give, devise and bequeath' imply the death of the testator before the devise or bequest can take effect. And the words, 'for and during all her natural life,' imply a termination of that life. And the words, 'during their minority,' imply a termination of the minority.

"The word 'then' is an adverb of time and usually relates to some antecedent period or event. Thus A. devises to B., and on the death of B. *then* to C. The word *then* in that case clearly refers to the death of B. Sometimes it indicates an order or succession of events. Thus a testator bequeaths to his son a sum of ten thousand dollars, and proceeds by will to say: 'Then I give and bequeath a like sum of ten thousand dollars to my daughter.' The word *then* in that case indicates an order of giving.

"It is one rule of the interpretation of language that the relative word refers to its nearest or immediately preceding antecedent; this rule of course has its qualifications, as where the relative word and the nearest antecedent are so manifestly incongruous that they cannot relate to one another.

"To apply this rule to the residuary devise in this will, it will be perceived that the nearest antecedent to which the word *then* can

[Cressons' Appeal.]

refer is the devising words, 'I give, devise and bequeath,' which are immediately followed by the words, 'to all my children who shall then be living.' When living? If there are no other words to control the intention clearly, then the will and devise are to take effect as a testamentary disposition, to wit, at the death of the testator.

"But supposing these words do not relate to the death of the testator, the next preceding period of time referred to is the minority of the children. Do the words 'who shall then be living' relate to this period or the termination of it? The testator had made provision in part at least for his children during their minority, by directing that the annuity of $4500 to his wife, should be for the support of herself and the board of the children during their minority. Were the children at the termination of their minority to be cut off from all support until the death of their mother? It will be observed that no provision was made for the clothing or education of the children during their minority by the bequest of the annuity to his wife. It was limited to the support of herself and the *board* of the children during their minority. It will be remembered also that two of these children were daughters, and little capable, probably, of providing a maintenance for themselves. Would it then in view of these facts be a safe construction of this devise to say that the testator intended that his children should have no clothing or education during their minority, and that they should not come into possession of the very large residuary estate which he left them until after the death of their mother, and only then contingent on their surviving her? If he meant this, he is supposed to have foreseen the possibility of his wife surviving him nearly half a century; during which time his children would be wholly unprovided for, except for their board during their minority. To give this construction to the will, the words of it should be so direct and decisive, or so clearly referable to no other construction of it, as to enable the court to say with reasonable certainty that this was the intention of the testator.

"If the death of the mother was the period of time to which the word *then* refers in the structure of the language of the will, it is the remotest antecedent of the three which have been referred to; and to reach it the construer must pass over the two others, which are more nearly proximate to it. In a doubtful case, surely, this is not a reasonable mode of construing the will.

"But if all three of these constructions be equally doubtful, what then is the rule of law for construing a devise and bequest of this character?

"The law always inclines to treat the whole interest in property as vested and not as contingent, and therefore in cases of doubt, it declares the interest vested: Letchworth's Appeal, 6 Casey 175.

"In cases of doubtful construction of wills, the law leans in

favor of an absolute rather than a defeasible estate; of a vested rather than a contingent one; of the primary rather than the secondary intent; of the first rather than the second taker, as the principal object of the testator's bounty; and of a distribution as nearly conformed to the general rules of inheritance as possible: Amelia Smith's Appeal, 11 Harris 9.

"Where the meaning of a devise is uncertain, the law adopts the principles of the intestate law; for whoever claims against the laws of descent must show a satisfactory written title. The rule of equality of descent to relatives of the same degree, is so just, that the law adopts it when the law is to govern, and prefers it when the law is called on to interpret: Lippman's Appeal, 6 Casey 180.

"For reasons above given, we think that the remainder of the estate of the testator vested in all his children living at his death, and that the heirs and legal representatives of such of them as are dead are entitled to such share as the deceased children would have taken if living."

The court accordingly decreed  *  *  *  "that the remainder of the estate of the said testator is vested in all the children of the testator who were living at his death, and the heirs and legal representatives of such of them as were dead; the latter to take such share as their respective parents would have taken if living," &c.

Emlen Cresson and William P. Cresson appealed to the Supreme Court, and assigned the decree of the Orphans' Court for error.

*S. S. Hollingsworth* and *G. W. Biddle*, for appellants.—To what time does the word "then" in the residuary clause apply? To the death of the widow, because his chief object was to provide for her for life. It could not apply to his own death, for he has not mentioned it, and therefore it would not be grammatical, and words are to be so interpreted: Jarman on Wills, p. 743, sect. 16. The estates of the children were contingent till the widow's death: Hannis *v.* McElroy, 9 Wright 216; McBride *v.* Smyth, 4 P. F. Smith 245; McKeehan *v.* Wilson, 2 Id. 74. The survivorship by operation of the word "then" relates to the time of distribution, although the gift was to a class: Wharton *v.* Barker, 4 Kay & Johnson 483; Olney *v.* Bates, 3 Drewry 319; Johnson *v.* Morton, 10 Barr 245.

*A. S. Letchworth*, for appellees.—In case of doubt an interest is to be treated as vested: Letchworth's App., 6 Casey 175; Amelia Smith's App., 11 Harris 9; Passmore's App., Id. 381; Manderson *v.* Lukens, Id. 31; Womrath *v.* McCormick, 1 P. F. Smith 504. Courts will not conjecture in favor of an intention against the general rule: 2 Wms. on Ex. 1084, note; Redfield on Wills 635; Frame *v.* Steward, 5 Watts 433; Busby's App., 11 P.

F. Smith 111. The heir is never disinherited unless by express words or necessary implication : Bender *v.* Dietrich, 7 W. & S. 284 ; McIntyre *v.* Ramsey, 11 Harris 317 ; Malone *v.* Dobbins, Id. 296 ; Walker *v.* Walker, 4 Casey 40 ; Hitchcock *v.* Hitchcock, 11 Id. 393.

Judgment was entered in the Supreme Court, January 19th 1874.

PER CURIAM.—This is not an easy will to interpret, but after a careful study of it we think the clause in the fifth item, " who shall then be living," refers to the children living when the property devised and bequeathed to them should vest in the children, to wit, at the testator's death. A few of the reasons leading to this conclusion are these. The word " *then* " in the clause refers to no distinct time by grammatical construction or manifest intention. Its reference is to be discovered rather by the subject of the item, and the intention drawn from the whole will. Had the subject of the fifth item been wholly the same property devised and bequeathed to the widow for life, the subject itself would have indicated her death as the period of vesting in the children. But it is obvious that the property disposed of in the fifth item embraced the entire remainder of the testator's estate. When he determined to settle his worldly affairs, he purposed to dispose of all his estate. He began by providing for his wife, and when he had finished that provision his mind evidently turned in the fifth item to making a provision for his children. They were very young ; he himself was a young man, in good health, and with a prospect of much longer life than that which awaited him. It was natural he should think it would be years before his own death, while some of his children might die before him. His mind taking in the scope of these circumstances would naturally run forward to the distant period which rose to his view, and he would seek to settle his estate according to the circumstances as they thus appeared to him, by willing all the remainder of his estate, not given to his wife, to those of his children who should be living at his death ; and therefore he devised and bequeathed this remainder to all of his children who should be then living. The sentence is evidently elliptical, not coming up to the fulness of his thought.

This intent is strengthened by the clear intent found in the sixth item, that his children should have an estate immediately at his death, for he appoints a guardian of their *estate,* while he appoints his wife guardian of their persons in accord with the evident intent drawn from the fourth clause, that she and they should remain together as a family, and their boarding be provided for out of the annuity. The intent in the fifth item interpreted along with the sixth item, to provide an immediate estate for his children at his death, is inconsistent with an intent to suffer their estate to become ambulatory until the widow's death, if that be the period referred

[Cressons' Appeal.]

to by the word " then." The expression " then " being obscure
in reference, all the other considerations arise which give a prefer-
ence to a vested estate instead of one that is contingent, and to
furnish a substantial provision for the education and clothing of
his children in addition to their boarding: otherwise his provision
for them would be illusory, and a large amount of his estate left
without any useful or proper disposition of it during the lifetime
of his wife.

Upon the whole we think the Orphans' Court came to a correct
conclusion, and the decree is therefore affirmed with costs, and the
appeal dismissed.