# Heath's Estate.

*Wills—Construction—Precedents.*

1. Precedents are of little value in the construction of wills.

2. When the actual intent of the testator, can be fairly gathered from his words, the fact that another testator has used the same words with a different meaning is of no avail.

3. Courts are not required to examine and hold themselves bound to apply decisions, prior to the date of the will, construing language having a similarity to that used by testator.

4. The rule stated in Hood v. Pennsylvania Society, 221 Pa. 474, that the construction of words used in a will by testator should be determined according to the decisions of the Supreme Court made before the date of the will, obtains only where the phraseology used by him is identical with that of wills which had been construed by the court, or, if not identical, is at least so similar as to afford a fair basis for the presumption that he was familiar with it; otherwise it would be rash to assume that he had it in mind and intended to follow it.

*Wills—Construction—Vested and contingent estates—"Then living"—Children—Words and phrases.*

5. Where a gift by will, after a life estate, was "to my children then living and their heirs forever, and if there should be a child or children of any of my children then deceased, they or it shall have the share of the deceased parent," the court, in considering the clause in connection with the will as a whole, construed the remainders to the children as contingent on their surviving the life tenant.

6. In construing such a clause, the court will take into consideration that, in a clause immediately preceding the one in question, testator used language which indicated that he knew how, in apt words, to create an unquestionably vested remainder when he desired to do so.

7. When such will was written in 1862, the language used had no settled construction.

Argued April 21, 1926. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART and SADLER, JJ.

Appeal, No. 184, Jan. T., 1926, by Howell E. Heath, exceptant, from decree of O. C. Phila. Co., Jan. T., 1901, No. 358, dismissing exceptions to adjudication, in Estate of Thomas Heath, deceased. Affirmed.

Exceptions to adjudication of VAN DUSEN, J.

The opinion of the Supreme Court states the facts.

Exceptions dismissed in opinion by GEST, J. See 7 Pa. D. & C. R. 216. Howell E. Heath, exceptant, appealed.

*Error assigned* was, inter alia, decree, quoting it.

*F. E. Barr,* of *Schell & Barr,* for appellant.—The settled rule of construction and policy of our law is to construe legacies and remainders as vested.

Testator's intent is to be ascertained from what he understood to be the legal meaning of the language at the time he used it: Hood v. Penna. Society, 221 Pa. 474.

The children of testator took a vested remainder: Mergenthaler's App., 15 W. N. C. 441; Reed v. Buckley, 5 W. & S. 517; Kelso v. Dickey, 7 W. & S. 279; Letchworth's App., 30 Pa. 175; Chew's App., 37 Pa. 23; Lantz v. Trussler, 37 Pa. 482; Burd v. Burd, 40 Pa. 182; Minning v. Batdorf, 5 Pa. 503; Manderson v. Lukens, 23 Pa. 31; Womrath v. McCormick, 51 Pa. 504; Cresson's App., 76 Pa. 19; Carstensen's Est., 196 Pa. 325; Rau's Est., 254 Pa. 464.

*Benjamin H. Ludlow*, for appellees.—There was no "generally accepted meaning of the language at the time the testator used it." On the contrary, there was expressed in our decisions at that time a wide divergence of views.

As to the fact that there was not any "generally accepted meaning of the language at the time the testator used it," see Rudy's Est., 185 Pa. 359.

This court has determined that the remainder, in circumstances exactly similar to those here presented, is contingent: Mulliken v. Earnshaw, 209 Pa. 226.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, May 12, 1926:

Appellant's statement of question involved is as follows: "Have the children of testator a vested remainder where a will provides 'I give devise and bequeath all the rest residue and remainder of my estate real personal and mixed, to my beloved wife Matilda Heath for and during the term of her widowhood, or as long as she shall remain my widow and at the termination of her widowhood either by marriage or death, I give devise and bequeath the same to my children then living & their heirs forever—and if there should be a child or children of any of my children then deceased they or it shall have the share of the deceased parent'?"

Whenever, from now on, in this opinion, the "testator" is mentioned, we mean Thomas Heath, the maker of the above will, who was the grandfather of appellant.

Testator made his will in September, 1862, and died in January, 1874; his widow, the life tenant, died in May, 1925. It is conceded that, at the time of the latter's death, testator's estate was divisible into three parts; concerning two of these parts there is no question, but the disposition of the other third gives rise to the present contest.

Charles E. Heath, a son of the testator, to whom the third in controversy would have belonged had he survived the life tenant, died in 1915. He left a will wherein he gave the residue of his estate "and whatever interest I may have in the estate of Thomas Heath, my father," to his son, Howell E. Heath, the present appellant. Two other children of Charles also survived their parent.

Appellant claims that the remainders created by testator were vested and that consequently the one-third interest of his father passed under the latter's will to him, Howell E. Heath; but the court below held the remainders to be contingent, and awarded the one-third in controversy to the three children of Charles E. Heath, thus giving to appellant but one-ninth of the grandfather's estate, instead of one-third; hence this appeal.

The auditing judge determined that the phrase "then living," as used by testator, immediately following a reference to the termination of the widow's estate, as it does, means and was intended to mean "that the gift in remainder is to those of the children [of testator] who might be living at the termination of the precedent estate"; and that, since appellant's parent was not then living, the parent's interest in testator's estate necessarily passed under the latter's will to all of such parent's children,—in other words, that it did not pass under the deceased parent's will, and, therefore, could not be awarded to appellant alone. This construction

was affirmed by the court below in banc, both on what it conceived to be the plain meaning of the words of the will itself, and on the authority of Mulliken v. Earnshaw, 209 Pa. 226.

The will before us indicates that testator knew how to create a life estate in his wife followed by vested fees absolute in his children, for, in the item immediately preceding the one now up for interpretation, he provided thus: "I devise to my......wife....my burial lot......for and during the term of her natural life and at and immediately after her decease, to my children as tenants in common & their heirs forever." In this item we have a simple devise without any words of contingency, or language susceptible of such construction; but, in the very next item,—the one with which we are here concerned,—testator, instead of simply giving the property involved to his children, as in the preceding item, says that, "at the termination" of the life estate, he gives the property to his children "then living," and, "if" any of his children not then alive should have left a child or children, "it or they shall have the share of the deceased parent."

In referring to Mulliken v. Earnshaw, supra, relied on by the court below, appellant frankly states in his printed argument: "The words of the will in this case are so nearly the same as in the case at bar that it is conceded there is no possible way of distinguishing the two except to say that the testator [in Mulliken v. Earnshaw] died long after 1874 [the date of the death of the present testator], and consequently this case cannot control in view of the ruling in Hood v. Pennsylvania Society [221 Pa. 474]."

This brings us to a consideration of the Hood Case. There, the remainder was held vested on the ground that the testator had used language which, "it was practically conceded," according to the interpretation generally placed thereon "at the date of his will," created a vested interest in those who were to take after the life

tenant; the court said, "That being the generally accepted meaning of the language at the time the testator used it, [it] must, in the absence of anything to the contrary, be accepted as the expression of his actual intent."

Appellant argues that the doctrine in the Hood Case should be applied to the present case, and that, if that course be followed, we are obliged, under the law as it was settled by our decisions at the time when the will now before us was made, to hold the estate here in controversy to be vested, not contingent; but we think appellant seeks to give too broad an application to the doctrine on which he relies. When properly understood, Hood v. Penna. Society simply decides that the "generally accepted meaning" of the language used by the testator when he made his will should be considered. The Hood Case does not decide that, in passing on a particular will, the courts must examine and hold themselves bound to apply all decisions, prior to the date of the will, construing language bearing a similarity to that used by testator, although this, in effect, is the import which appellant claims for that decision.

It cannot be said, however, that the law as it stood in 1862 or 1874 requires the construction of the will which appellant contends for. The mere fact that certain previously-decided cases happened to construe wills couched in language somewhat like, but not the same as, that employed in the one up for interpretation, will not warrant a court in holding that the words used in the latter had, because of those prior decisions, acquired a fixed judicial construction,—much less a generally accepted meaning,—which had to be adhered to under all circumstances. As correctly said by Judge GEST, speaking for the court below in banc: "Unless the phraseology is identical with that of wills which had been [previously] construed, or if not identical is at least so similar as to afford a fair basis for the presumption that the testator was familiar with [the previous construction], it

would be......rash to assume that he had it in mind and intended to follow it":. see opinion reported in 7 Pa. D. & C. R. 216.

With the rule in the Hood Case thus understood, it may be seen that the decisions relied on by appellant, made prior to testator's decease, where the wills involved contain somewhat-like language, but with differing context and used under different circumstances, cannot properly be held to have given a settled construction to the language employed in the present will. In the first place, as was recently said by this court, in Kirkpatrick's Est., 280 Pa. 306, 312, "Precedents are of little value in the construction of wills, because, when used under different circumstances and with different contexts, the same words may express different intentions. When the intent of the testator, and by that is meant his actual intent, can be fairly gathered from his words, the fact that another testator has used the same words with a different meaning is of no avail. Neither precedents nor rules of construction can override the testator's expressed intent." Next, the wills in the cases particularly relied on by appellant (Manderson v. Lukens, 23 Pa. 31; Womrath v. McCormick, 51 Pa. 504; Cresson's App., 76 Pa. 19) all differ in language from the one now before us, and when analyzed it will be seen that these variations in phraseology have a bearing on the difference in construction placed on those wills and on the instant one: see opinion of Judge GEST in the present case, 7 Pa. D. & C. R. 216.

As a final word in regard to Hood's Appeal, we adopt the following excerpt from the opinion of the court below: "Many cases have been decided where the rule of Hood v. Pennsylvania Society has been disregarded or passed sub silentio......; thus, in Long's Est., 225 Pa. 39, decided......just one year after Hood v. Pennsylvania Society, the testator made his will in March, 1867, confirmed it by a codicil in 1870, and therein devised an estate to his niece and after her death gave the same to

her children 'living at the time of her death, share and
share alike.' The niece had one child who died before
her, intestate and without issue, and the court held that
the remainder to her children was contingent...... On
appeal, the rule of Hood v. Pennsylvania Society was ex-
pressly invoked, and Manderson v. Lukens and Wom-
rath v. McCormick were cited, but the Supreme Court
affirmed the adjudication of the auditing judge."

Carstensen's Estate, 196 Pa. 325, called to our atten-
tion by appellant, was decided before Mulliken v. Earn-
shaw, 209 Pa. 226; but the decision in the former is
neither inconsistent with that in the latter nor with our
present determination. In Carstensen's Estate,—where
the remainders were held to be vested at the death of the
testator, but liable to be divested as to any one of the
legatees by his or her decease, in the lifetime of the first
taker, leaving a child or children,—the gift in remainder
was to brothers and sisters generally, without words of
contingency; whereas here, and in Mulliken v. Earn-
shaw, the gift in remainder is to children of testator
living at a designated future time, without any distinct
gift to children generally preceding such restrictive de-
scription, and this combination has been held to create
a contingent remainder; for governing rule, see Craige's
App., 126 Pa. 223, 232.

In the present case, the children of deceased remain-
dermen take the shares their respective parents would
have received if alive, which is true also of Carstensen's
Estate and Mulliken v. Earnshaw; but the language to
this effect differs in the several wills, and, when seek-
ing for the meaning of a testator, differences in expres-
sion may be significant, as also may be the light thrown
on a particular devise by the use of a form of expression
in another part of the will under investigation. For in-
stance, the language in the immediately preceding item
of the present will, which, as previously noted, indicates
that testator knew how, in apt words, to create an un-
questionable vested remainder when he desired to do so,

has some relevant force in construing the item with which we are immediately concerned. It was just such considerations as here pointed out, and which occur in almost all will cases, that led Chief Justice SHARSWOOD to say, in Fox's App., 99 Pa. 382, 386: "Every will..... is to be construed from its four corners to arrive at the true intention of the testator; decisions upon other wills may assist but cannot control the construction."

We agree with the court below that, at the date of the will under consideration, the language used in the particular devise now before us had no "settled construction" and that the real question is as to the intention of the testator,—Did he intend to create vested or contingent estates for his children? In this connection, appellant calls attention to Groninger's Est., 268 Pa. 184, 188-89, where, quoting from earlier opinions, we said: "'What is required in such case is not that the words of the will admit of a possible, or even a reasonable, inference that the testator intended a contingent remainder, but that such intention should appear plainly, manifestly and indisputably,' otherwise the estate in remainder is always held to be vested." Here, however, the court below concluded that, reading the will as a whole, the language of the particular devise manifested an intention to create contingent remainders; and we are not convinced of error in this conclusion. But, whether we hold that the rule in Carstensen's Estate applies, and that the remainders to testator's children were vested, subject to be divested in the case of any such remaindermen dying during the life-tenancy, leaving children, or that the rule in Mulliken v. Earnshaw (p. 231) applies, —that "Where real or personal estate is devised or bequeathed to......such children who shall......be living at a certain [future] time, without any distinct gift to the whole class preceding such restrictive description, so that the uncertain event forms part of the description of the devisee or legatee, the interest so devised is necessarily contingent on account of the person,"—the re-

sult is the same; for here the child in question (son of testator and father of appellant) died, during the life-tenancy of his mother (the widow of testator), leaving children, hence his estate, if vested, was divested in favor of these children, or if contingent, never came into his possession for testamentary disposition. All of which leads to the conclusion that the decree complained of is unassailable.

The assignments of error are overruled and the decree is affirmed at cost of appellant.