## Booth Trust.

Argued March 18, 1960.   Before JONES, C. J., MUS-
MANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Harry D. Martin*, with him *James A. Stranahan, III,
Isaac J. Silin*, and *V. H. Elderkin, Jr.*, for appellant.

*Philip E. Brockway*, with him *G. Carroll Stribling*,
of the Missouri Bar, and *Brockway & Brockway*, for
appellee.

OPINION BY MR. JUSTICE COHEN, June 3, 1960:

This is an appeal from the decree of the orphans'
court dividing a fund between the appellant and the
estate of the appellant's deceased brother.

In 1937 Jane St. John Booth created an inter vivos
trust in which she retained for herself and after her
death gave to her daughter, Louise St. John Booth, a
life estate in the net income with power to invade the
corpus.   The settlor further provided that upon the
death of the survivor of her daughter Louise or her-
self the principal of the fund, together with any un-

distributed income (after the payment of several specific gifts), should be divided into seven shares,[1] one of which was to be paid to "Mary Maud Henninger . . . and in the event of her prior death then in equal shares to her children. . . ."

The settlor further provided in "Article III" of the trust agreement as follows: "The Donor reserves the further right, and from and after the death of JANE ST. JOHN BOOTH the same right and privilege is extended to LOUISE ST. JOHN BOOTH, to be exercised exclusively by her, to modify, change, add to and eliminate any of the provisions of item (d) of Article I hereof, either as to the named beneficiaries by way of elimination or by the addition of other beneficiaries thereto or by increasing or decreasing the amounts to be paid to them at the time fixed for distribution; *it being the intent and purpose of the Donor that none of the named beneficiaries shall be presumed to have any interest in the fund held hereunder, either vested or contingent or otherwise prior to the death of the survivor of* JANE ST. JOHN BOOTH *and* LOUISE ST. JOHN BOOTH. In the exercise of this reservation, any modification or change of the schedule of payments as provided by item (d) of Article I hereof shall be directed in writing in the form of an Amendment to the Declaration of Trust signed by the Donor during her lifetime and thereafter by LOUISE ST. JOHN BOOTH which, when filed with the Trustee, shall be incorporated as a part of the said indenture." (Emphasis supplied).

Jane St. John Booth died November 9, 1946, without having amended the indenture of trust. Louise, however, on July 26, 1951, duly exercised her power

---

[1] The residue was originally a one-seventh share, but due to the intervening death of one of the beneficiaries is now a one-sixth share.

of amendment[2] and changed the gift to Mary Maud Henninger to read as follows: "The Trustee shall pay over all of the net income arising from the invested fund to MARY MAUD HENNINGER for her individual use and benefit for and during the period of her natural life, and at her death all of the fund held by the Trustee including any accrued or undistributed income shall be paid over in equal shares to the children of MARY MAUD HENNINGER as may be living at the time of her death, and in default of children her surviving, then the same shall be paid over to . . . [the] Trustee under the [Original Trust Indenture] . . . to be included with any funds held by said Trustee and to be paid out and distributed in accordance with the provisions of the said Deed of Trust at the time therein directed for the termination of said Trust."

Louise had apparently intended by the amendment to prevent a home in which Mary Maud Henninger was living from receiving any part of the legacy (under an agreement between the home and Mrs. Henninger requiring her to turn over any assets, including legacies, to the institution). While Louise was in ill health at the time of this amendment, and doubtlessly anticipated that she would predecease Mary, the latter died first on May 2, 1953. Mrs. Henninger was survived by a daughter, Edith St. John Floyd, appellant, and a son, George C. Henninger. George also predeceased Louise, his death occurring August 4, 1956, while Louise died on February 11, 1957.

The appellant contends that the trust indenture, properly construed, provides that only the children of Mary Maud Henninger who survive Louise are entitled to share in the fund, and she therefore claims the en-

---

[2] An earlier amendment, similar to the instant one, was made on April 11, 1950. Since it was superseded by this amendment it is irrelevant here.

tire fund. Contrariwise, the lower court held that the interests of Mary's children vested for devolution purposes at her death, and accordingly divided the fund equally between the appellant and the estate of George C. Henninger.

The sole question herein presented is whether, under the language of the trust indenture as amended, a child of Mary Maud Henninger had to survive Louise in order to be eligible to take under the trust. It is clear that no such requirement was spelled out by the language employed. The gift in question goes to the children of Mary "as may be living at the time of her death, and in default of children her surviving", then over to the trustee for other purposes. Unmistakably, Louise intended that the members of the class of children who would take under the trust would be ascertained at Mary's death. See *Wetherill's Estate*, 214 Pa. 150, 63 Atl. 406 (1906). Moreover, the fact that Louise expressly provided for further distribution only if *no child survived Mary*, but did not make a similar provision in the event that children failed to survive her, lends compelling weight to the argument that no further condition was annexed to the gifts. While Louise St. John Booth obviously did not anticipate the order in which death in fact occurred, and accordingly made no express provision for such occurrence in her amended gift, we will not read into an otherwise clearly worded gift a further condition of survivorship. *Metzgar Estate*, 395 Pa. 322, 148 A. 2d 895 (1959).

Appellant, however, reminds us of our duty to consider the indenture as a whole, and contends that if we do so, we will discern the requirement that Mary's children had to survive Louise in order to take under the trust. In this regard, appellant directs our attention to the language of Article III of the indenture (quoted above) that "none of the named beneficiaries shall be presumed to have any interest in the fund held

hereunder, either vested or contingent or otherwise, prior to the death of the survivor of Jane St. John Booth and Louise St. John Booth."

Appellant argues that this language is highly indicative of an intent on the part of the settlor that no determination of beneficiaries be made until the death of the survivor of Jane and Louise. We agree with the court below, however, that when considered in the full context of Article III of the indenture, the above language was employed only to assure that none of the *named* beneficiaries would have any kind of interest prior to the deaths of Jane and Louise that would have prevented either from effecting an amendment of the indenture in order to eliminate the interests of the named beneficiaries, and was not intended as a survival requirement for all beneficiaries, named or unascertained. Article III deals exclusively with the powers to increase, decrease or modify the trust. In addition to the power to amend, it specifically sets forth a general power of revocation in Jane and a partial power in Louise, and gives to both the right to deposit additional property as part of the trust. The article was not concerned with imposing a general limitation of survivorship on the donees under the trust; such limitations as there are on individual gifts are set forth adequately and expertly in Article I. Rather, the language was employed in an explanatory manner, to fortify the legal effectiveness of the preceding clause which specifically set forth the amendatory powers in Jane and Louise. Significantly, the clause was expressly concerned with *named* beneficiaries who might more readily be deemed to have the sort of "vested" gift that might prevent an amendment, as opposed to unascertained beneficiaries whose gifts would be contingent and more easily revoked. We find no indication that survival of Louise was required by this clause.

In regard to appellant's other contention, that a consideration of the other gifts and the circumstances of Louise's health and anticipations at the time she amended the indenture will indicate the survivorship requirement, we need only say that we have carefully studied the entire trust indenture in the light of these circumstances and conclude, as did the court below, that the contention is without merit.

Accordingly, since we find that the children of Mary were required only to survive Mary in order to be eligible to take under the trust, the distribution ordered by the court below is correct.

Decree affirmed at appellant's cost.