## Watson's Estate.

*Wills—Construction—Life estate with power of consumption—Bond to protect remaindermen—Act of April 17, 1869, P. L. 70.*

1. The rule that a bequest of personalty, with power to consume, sell and dispose thereof, carries an absolute and unrestricted title to it, although there is a gift over of what is left to other parties, is not a rule of law, but a rule of construction in aid of discovery of testator's intent, and it will be applied only where the legatee has used and appropriated the property in an honest exercise of the discretion with which the testator has clothed him. The test in all such cases is the good faith of the action of the beneficiary.

2. A devise of an estate, with power to convert and consume, where there is a gift over of the unconsumed part on the death of the first taker, does not authorize the devisee to apply the unconsumed part to any other purposes than his own support.

3. Testator by will provided: "All the rest and residue of my estate and any lapsed legacies, real, personal or mixed, whatsoever and wherever situated, I give, devise and bequeath to my said wife, Mary Watson, in lieu of her dower interest, for her sole use, benefit and support during her natural life, and to be in her sole

control and direction, and whatever remains of the same at her death, whether real, personal or mixed, my Will is and I hereby direct my executor to convert into money." He then gave "all my estate so remaining after the death· of my said wife" to the heirs of his deceased brothers and sisters. The widow entered into possession of the estate. One of the remaindermen filed a petition, averring that the widow had an income more than sufficient for her needs, that "being now advanced in years, and in poor health, surrounded by relatives whom she has been induced to aid and support, she is spending, and has spent, principally for and on account of said relatives" much more than her annual income. The petition prayed that the widow should be required to file an account and give bond for the protection of the remaindermen. The widow filed an answer, averring that she was not accountable for the consumption of the property, and generally denying the facts alleged. The lower court dismissed the petition. *Held,* error. Testator did not intend that his wife should unconditionally take the residue of his estate; he desired that she should be properly maintained and supported in the manner in which she had lived, and that after the residue of the estate had served the purpose of supporting her during life, it should go to his collateral relatives named in the will as legatees. *Held,* further, that it was the duty of the lower court to ascertain the facts, and, if found to be necessary, to require a bond for the protection of the remaindermen, as directed by the Act of April 17, 1869, P. L. 70.

Argued April 13, 1913. Appeal, No. 353, Jan. T., 1912, by Jane A. Murphy, from decree of O. C. Fayette Co., Sept. Ct., 1911, No. 45, dismissing petition in Estate of James G. Watson, deceased. Before FELL, C. J., BROWN, MESTREZAT, POTTER and ELKIN, JJ. Reversed.

· Petition to require a life tenant of personal property, with power to consume, to file a bond for the protection of the remaindermen. Before WORK, P. J.

The opinion of the Supreme Court states the facts.

The court dismissed the petition.

*Error assigned,* among others, was in dismissing the petition.

*L. H. Frasher,* with him *Daniel Sturgeon,* for appel-

lant.—The widow has the property only during her life, and only for the special purpose named in the will. She cannot during her life give it to others, or waste or squander it: Morrison v. Semple, 6 Binney 94; Gold's Est., 133 Pa. 495; Drennan's App., 118 Pa. 176; Johnson v. Morton, 10 Pa. 245; Tyson's Est., 191 Pa. 218; Gross v. Strominger, 178 Pa. 64; McArthur v. Scott, 113 U. S. 340; Cox v. Handy, 78 Md. 108; Little v. Geer, 69 Conn. 411; Lehnard v. Specht, 180 Ill. 208; Woodman v. Woodman, 89 Me. 128; Bancroft v. Fitch, 164 Mass. 401; Min Young v. Min Young, 47 Ohio 501; Sloan's Est., 7 Pa. D. R. 363; Smith's Est., 7 Pa. D. R. 754; Johnson v. Johnson, 51 Ohio 446; Glover v. Reid, 80 Mich. 228.

*W. J. Sturgis*, with him *J. B. Adams* and *Reppert, Sturgis & Morrow*, for appellee.—The estate given to the wife is not an estate for life with power of consumption, but an estate endowed with all the incidents of absolute ownership, with a devise and bequest over of whatever might be left at her death: Heppenstall's Est., 144 Pa. 259; Follweiler's App., 102 Pa. 581; Pennock's Est., 13 Pa. 253; Jauretche v. Proctor, 48 Pa. 466; Levy's Est., 153 Pa. 174; Boyle v. Boyle, 152 Pa. 108; Merkel's Est., 109 Pa. 235; Hambright's App., 2 Grant (Pa.) 320.

OPINION BY MR. JUSTICE MESTREZAT, May 22, 1913:

We think the controlling question in this case is ruled by Tyson's Est., 191 Pa. 218, Dickinson's Est., 209 Pa. 59, and kindred cases, and that the learned court below erred in its disposition of the case. The doctrine is well illustrated in Tyson's Estate. There the testator gave his widow his whole estate, both real and personal, with the right to use it at pleasure for her sole use as fully and largely as the testator himself could have done in his lifetime and with the management and control of the same, and with full power at any time to sell or dispose of any part or the whole of it and to transfer or

convey the same to the purchaser. He directed that
after his widow's death the executors should sell the
personal property and real estate if any remained, pay
all just debts and expenses, and gave one-half of the
residue to his brothers and sisters and the other half
to the brothers and sisters of his widow. At the time
of her death the widow was in possession of part of the
personal property and part of the real estate which she
disposed of by will. The executor of her husband pre-
sented a petition to the Orphans' Court and obtained a
citation to show cause why the property remaining in
her possession should not be delivered to him. He
claimed that she took but a life estate in both the per-
sonal and real property while the respondents, the execu-
tors of the widow and the legatees under her will,
claimed that, under her husband's will, she took an ab-
solute estate in the property. The Orphans' Court re-
fused the relief prayed for in the petition, holding that
by her husband's will the personalty passed to his widow
absolutely, on the ground that a bequest of personalty
with power to consume, sell and dispose of, carries an
absolute and unrestricted title to it. The husband's
executor appealed to this court, and we reversed the
decree of the lower court, holding that the rule that a
bequest of personalty with power to consume, sell and
dispose of carries an absolute and unrestricted title to it,
although there is a gift over of what is left to other
parties, is not a rule of law, but a rule of construction
in aid of discovery of testator's intent, and that it will
be applied only where the legatee has used and appro-
priated the property in an honest exercise of the discre-
tion with which the testator has clothed him. In dis-
posing of the case we said (p. 228): "The test in all
such cases is the good faith of the action of the bene-
ficiary. If it is an honest exercise of the discretion with
which the testator has clothed him his action is con-
clusive, but he cannot be permitted to make use of the

mere form to defeat or evade the true intent and pervert the gift to a different purpose."

James G. Watson died in Uniontown in 1902, testate, leaving to survive him a widow, Mary Watson, and collateral relatives but no issue. He left a will, dated March 22, 1902, by which, after directing the payment of his debts and funeral expenses, he gave to his wife in fee, and in case of her death before him, then to her heirs in fee, two improved lots and one vacant lot situate in Uniontown. By the second and third items of his will he bequeaths certain pecuniary legacies, amounting in the aggregate to $1,300. The fourth item of the will, the one out of which this controversy arises, provides as follows: "All the rest and residue of my estate and any lapsed legacies, real, personal or mixed, whatsoever and wherever situated, I give, devise and bequeath to my said wife, Mary Watson, in lieu of her dower interest, for her sole use, benefit and support during her natural life, and to be in her sole control and direction, and whatever remains of the same at her death, whether real, personal or mixed, my Will is and I hereby direct my executor to convert into money." He then gives "all my estate so remaining after the death of my said wife" to the heirs of his deceased brothers and sisters.

Watson's executor filed a final account on May 26, 1902, showing a balance after deducting the debts, specific legacies, and cost of administration of $19,293.48. This balance was made up of $150 in household goods, $15,000 in bonds, and $4,143.48 in cash, all of which was turned over to the widow under item 4 of the will.

Jane A. Murphy, daughter and heir of a deceased brother of the testator, presented her petition to the court below setting forth, inter alia, the facts above stated and averring that in addition to the personal property received by the widow from the executor that she took into her possession the real estate devised to her husband which in addition to furnishing her a

place of residence furnished also an income to her of $600 per year in rents, that her net income from the rents and the personal property bequeathed her was over $100 per month, that such income was sufficient "for her sole use, benefit and support," and more, in fact, than she uses, that "being now advanced in years and of poor health, surrounded by relatives whom she has been induced to aid and support, she is spending and has spent, principally for and on account of said relatives, as your petitioner is informed and believes and will be able to prove, not only her said annual income of about $1,600, but also the said $4,143.48 in cash, received from said executor, and of said $15,000 of bonds to the amount of one to two thousand dollars." The petition prayed that the widow be required to file an account showing the property received and held by her under item 4 of her husband's will, also the income derived therefrom and that she be required to give bond for the safe keeping of the property received and held by her under item 4 of the will.

The widow filed an answer in which she averred that the property given her in the fourth item of her husband's will was for her sole use, benefit and support during her natural life, and to be in her sole control and direction, and that she is not accountable to the petitioner for the use she makes of said property or for the management thereof or for the income arising therefrom, "the petitioner under the terms of the will of said deceased, having no interest in said property but having only an interest in the proceeds of such portion thereof as may remain at respondent's death." The answer denied the right of the petitioner to inquire into the amount of the income of the respondent, and also denied that the respondent is incapacitated by age or poor health from managing properly her business or that she is surrounded by relations who have induced her to aid and support them, or that she has expended any sums of money other than she has a full right and

power to do under the terms and provisions of the will
of the deceased.

We have no doubt as to the intention of the testator
in regard to the property disposed of in item 4 of his
will.   Read in the light of the circumstances surround-
ing him at the time he made the will, there is but one
reasonable conclusion as to the disposition he intended
to make of his residuary estate.   He owned the real
estate bequeathed to his wife in fee and the personal
property shown by his executor's account.   He had no
children, and left to survive him, besides his wife, the
descendants of two brothers and a sister.   The aver-
ments of the petition, not denied in the answer, would
lead to the conclusion that the real estate devised to his
wife was worth several thousand dollars.   As the peti-
tion avers, this gave her a residence and an income of
$50 per month.   Having given his wife the real estate
in fee, he then disposes of the residue of his estate.   He
clearly intended that the remainder of that part of his
estate should not go to his wife's, but to his own rela-
tives.   He had given her and them a good share or part
of his estate and he did not intend that her relatives
should further participate in his bounty.   Neither did
he intend that his wife should unconditionally take the
residue of his estate.   He desired that she should be
properly maintained and supported in the manner in
which she had lived, and that after the residue of the
estate had served the purpose of supporting her during
life it should go to his collateral relatives named in the
will as legatees.   All the circumstances surrounding
the testator at the time he executed the will point un-
mistakably to this as his intention in the fourth item of
the will.   The residue of the estate is given to her "for
her sole use, benefit and support during her natural life,
and to be in her sole control and direction, and what-
ever remains of the same at her death, whether real,
personal or mixed," is directed to be converted into
money, and distributed to his collateral heirs.   There

can be no presumption or inference fairly drawn from
this language that the testator intended that his wife
should take the residue of the estate absolutely and
without any restriction. As said in Tyson's Estate,
"on the contrary, his intention was to give her so much,
and only so much, though possibly amounting to the
whole, as should be necessary for her own comfort and
enjoyment of life, and the residue, be it much or little,
was to pass under his will." Had he intended an abso-
lute estate to go to his wife without limitation or re-
striction, he could easily have said so. If that were his
purpose, the language used by him was entirely un-
necessary, and it is never presumed in the interpreta-
tion of a will that any part of it is useless or meaning-
less. He unquestionably intended that she should take
the property for life, but, as he declares, it was only
"for her sole use, benefit and support" during that
period. Equally true is it that he intended that she
should have control and direction of the property, but
it was for the purpose specified in the will, viz: for her
support during her natural life. This is made manifest
by the fact that "whatever remains of the same at her
death" goes to the remaindermen named in his will.
This provision clearly shows that she did not take the
property absolutely nor that it was in her sole control
and direction for the purpose, if she pleased, of apply-
ing it to other purposes than her own support. While
she could appropriate or dispose of the whole property,
if necessary, for her own support, she could not apply
any part of it to any other purpose. The testator did
not intend that she should use the property, or its pro-
ceeds, for the support of relatives or that she should
devote it to any other purpose than as directed in his
will. We may appropriately quote in this connection
the following language of McCollum, J., in Gross v.
Strominger, 178 Pa. 64, 70: "Whatever was necessary
for her support he intended she should have. If the
income of the estate was sufficient to afford her a suita-

ble maintenance it was his intention that the principal of it should go, at her decease, to the children and grandson, unimpaired. A construction of the privilege (to use the principal if necessary for her comfort) which makes it operate as an absolute gift to the wife of the residue of the estate would defeat the plain purpose of the testator and take from the children and grandson named in the will that which he intended they should have at her decease."

We have carefully considered the printed argument and the authorities cited by the learned counsel for the appellee. They do not rule the case at bar nor are they in conflict with our conclusion as to the proper interpretation of the testator's will. We do not deem it necessary to discuss the several authorities cited by counsel. A careful examination of them will disclose that a devise of an estate with power to convert and consume where there is a gift over of the unconsumed part on the death of the first taker does not authorize the devisee to apply the unconsumed part to any other purpose than her own support.

Having held that under the testator's will his widow is entitled to the residue of the estate for her support and that she can not apply it to any other purpose, we think it was the duty of the learned court below to investigate the allegations of misappropriation contained in the petition and if found to be true to protect the petitioner and the other remainderman. The Act of April 17, 1869, P. L. 70, provides: "The owner of any contingent interests in the personal property of any decedent......may require the legatee of any previous interest in the same property, before receiving the same, to give security......in such sum and form as in the judgment of such court shall be sufficient to secure said contingent interest, whenever the same may accrue or vest." The act is applicable to the facts of the present case, and the petitioner, being a remainderman, has a contingent interest in the property in the hands

of the legatee. The latter holds the fund for the specific purpose named in the will, and as to it she occupies the position of a quasi trustee for herself and the remainderman. The petitioner, however, was not entitled to have an account filed by the respondent. In fact, there was no necessity for an account. The executor of the estate had filed an account disclosing all the necessary information as to the quantity of the estate which passed into the hands of the widow. A citation should have been issued in conformity with the practice in the Orphans' Court. If the answer denied the averments of misappropriation contained in the petition, the facts should have been ascertained in the usual way by depositions. If it should be found that the widow was in good faith applying the estate bequeathed her in item 4 of the will for her own benefit and support, the remaindermen have no just ground to complain. If, on the other hand, it is made to appear that she is appropriating the property or its income for other purposes than her own support, then the court should exercise the authority conferred by the Act of 1869 by requiring security to protect the remaindermen. So long as the widow uses the property for her own support she has the unquestioned right to the control and direction of it, and the court can only interfere to protect the remaindermen when the widow attempts to divert the fund from the purpose for which it was bequeathed her.

The decree of the court below is reversed with directions to reinstate the petition and proceed with the case as directed in this opinion. Costs to be paid by the appellee.