Metzgar Estate.

Argued January 7, 1959. Before JONES, C. J., MUS-MANNO, JONES, COHEN and MCBRIDE, JJ.

*Alexander A. Notopoulos,* for appellant.

*Richard A. Carothers,* with him *Samuel H. Jubelirer,* for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, March 16, 1959:

Samuel Metzgar died February 19, 1955 survived by a sister, Savannah B. Paul, and nephews and nieces, children of deceased brothers and sisters. Under his last will—executed March 10, 1914—he provided, inter alia: "I devise that all my property: Real, and personal to my beloved wife, Ida Priscilla, during her life. And from and after her death to my Brothers and Sisters then living share and share alike".

The wife-life tenant died on December 16, 1936, 22 years after execution of the will and 19 years prior to the testator's death. When she died two sisters of the testator were *then* living, Mary E. Loreman and Savannah B. Paul. The former died in 1937, her sole

survivor being a daughter, Mary I. Etienne. When testator died, he, (so far as herein pertinent), was survived by the one living sister, Savannah B. Paul, and the niece, Mary I. Etienne.

When testator's personal representatives filed their account they suggested distribution of the balance of the estate to Savannah Paul on the theory that she alone had survived the testator, and thus constituted the only member of the class entitled to take. Mary Etienne claimed that, since her mother, Mary E. Loreman, survived the life tenant, she, as the representative of her mother, was a member of the class, and was entitled to take one-half of the estate. She, accordingly, filed exceptions to the suggested distribution.

The court below referred the matter to an auditor who found that testator had intended to make a class gift, that membership in the class was fixed at the time of the wife-life tenant's death, that the members of the class were Mary E. Loreman and Savannah Paul and recommended distribution of the balance of the estate equally between Savannah Paul and Mary E. Loreman's only survivor, Mary Etienne. The court below adopted the auditor's recommendations and entered a decree dividing the estate equally between Savannah Paul and Mary Etienne. From this decree Savannah Paul took this appeal.

The sole question herein presented is whether under the language of this will membership in the class of takers was to be ascertained at the time of the life-tenant's, or the testator's, death. Any discussion of whether the interest of the testator's brothers and sisters under this will was vested or contingent would seem academic in view of the testamentary requirement that the takers must survive to a certain time or event; whether the interest be vested or contingent, if the taker failed to survive, his or her interest would be destroyed. See, e. g., *Buzby's Appeal*, 61 Pa. 111.

An examination of this will reveals clearly the testator's intent in several respects: (1) testator's wife was the primary object of his bounty and until her death occurred no one was to share in testator's property; (2) the factual situation which testator contemplated when he made his will was entirely different from that which actually occurred, i.e., his wife did not survive him;[1] (3) not *all*, but only *some*, of his brothers and sisters were to share in his estate, i.e., *only* those brothers and sisters who survived a certain event. It is our problem, if possible, to fix that event.

In the absence of a contrary intention apparent from the language and terms of the will, the rule in this Commonwealth has been that survivorship is to be determined as of the date of the testator's death; *Johnson v. Morton,* 10 Pa. 245; *Ross v. Drake,* 37 Pa. 373; *Woelpper's Appeal,* 126 Pa. 562, 17 A. 870; *Black v. Woods,* 213 Pa. 583, 63 A. 129; *Kohl v. Kepler,* 266 Pa. 522, 110 A. 239; *Morris's Estate,* 270 Pa. 120, 113 A. 61; *Nass's Estate,* 320 Pa. 380, 182 A. 401.

However, this rule is one of construction and therefore must yield to the actual intent of a testator if the expression of such intent can be garnered from the language of the will. As Mr. Justice MITCHELL well stated in *Woelpper's Appeal,* supra, (p. 572): "With the desire to reduce to a minimum the perplexity and uncertainty inseparable from the subject, courts have established certain more or less artificial and arbitrary canons of construction, by which certain forms of expression are presumed to have certain meanings, and in doubtful cases these presumptions are held to be decisive. But all of these canons are subservient to the great rule as to intent, and are made to aid, not to override it. As in all such cases, care is required that

---

[1] Yet for 19 years from the time the factual situation changed testator allowed his will to remain unchanged.

tools shall not become fetters, and that the real end shall not be sacrificed to what was intended only as the means of reaching it."

Section 14(4) of the Wills Act of 1947[2] provides: ". . . In the absence of a contrary intent appearing therein, wills shall be construed as to real and personal estate in accordance with the following rules: . . .

"(4) Meaning of 'Heirs' and 'Next of Kin,' etc.; Time of Ascertaining Class. A devise or bequest of real or personal estate, whether directly or in trust, to the testator's or another designated person's 'heirs' or 'next of kin' or 'relatives' or 'family' or to 'the persons thereunto entitled under the intestate laws' or to persons described by words of similar import, shall mean those persons, including the spouse, who would take under the intestate laws if the testator or other designated person were to die intestate at the time when such class is to be ascertained, a resident of the Commonwealth, and owning the estate so devised or bequeathed: Provided, however, That the share of a spouse, other than the spouse of the testator, shall not include the ten thousand dollar allowance under the intestate laws. *The time when such class is to be ascertained shall be the time when the devise or bequest is to take effect in enjoyment.*" (Emphasis supplied). This statutory provision applies only to class gifts and then only to such class gifts as fall fairly within the statutory language. The instant gift is a class gift and "brothers and sisters" are sufficiently "words of similar import" to bring the instant gift within the statutory provision. Here again, however, the statutory rule must yield if within the four corners of this will a contrary intent appears.

Under the testamentary scheme of this will testator's brothers and sisters are to take *only* "from and after

---

[2] Act of April 24, 1947, P.L. 89, §14(4), 20 PS §180.14.

[the life tenant's] death": The will then goes on to provide that only such brothers and sisters shall take who shall be "then living". The word "then" becomes all important; sometimes employed as an adverb of time, at other times it is employed as a reference to an event. Our courts have interpreted "then" in various ways depending upon its use and position in the will and the purpose for which its interpretation is sought: in *Buzby's Appeal*, 61 Pa. 111, the word "then" was held to refer to the testator's, not the life tenant's, death; in *Wood v. Schoen*, 216 Pa. 425, 66 A. 79, the word "then" was construed as referring to the death of the life tenant; in *Nass's Estate*, 320 Pa. 380, 182 A. 401, the word "then" was held insufficient to bar the application of the general rule of construction; in *Fitzpatrick's Estate*, 233 Pa. 33, 81 A. 815, the word "then" was held to refer to "heirs" of a testator living at his, not the life tenant's, death; in *Dailey's Estate*, 268 Pa. 379, 111 A. 922, the word "then" was held to refer to the death of the life tenant; in *Heath's Estate*, 286 Pa. 335, 133 A. 558, the phrase "then living" was held to refer to the date of the life tenant's death; in *Laughlin's Estate*, 336 Pa. 529, 9 A. 2d 383, the word "then" was held to refer to the life tenant's, not the testator's, death; in *Bomberger Estate*, 347 Pa. 465, 32 A. 2d 729, the phrase "then living" was held to refer to the date of the life tenant's death. An examination of these cases well illustrates that which was said in *Long's Estate*, 270 Pa. 480, 487, 113 A. 675: " '. . . precedents are of little value in the construction of wills, because, when used under different circumstances and with different context, the same words may express different intentions. When the intent of the testator, and by that is meant his actual intent, can be fairly gathered from his words, the fact that another testator has used the same words with a different meaning is

of no avail. Neither precedents nor rules of construction can override the testator's expressed intent . . .' "

The language of this will leads us to the conclusion that when the testator used the phrase "then living" in juxtaposition with the clause "from and after the [life tenant's] death" he fixed the event upon which membership in the class of takers would be ascertained as the death of the wife-life tenant rather than his own death. While the takers would not enter into enjoyment of his estate until his death the class closed as of the death of his wife. Any other construction of the language of this will would amount to distortion of that which testator stated in his will.

The language of this will sufficiently expresses an intent contrary to the general rule of construction and to the statutory provision in the Wills Act of 1947, supra, so that neither control in our construction of this will.

When the will was made the testator contemplated that his wife would outlive him. It may be urged that testator must have intended the language of the will to apply only in the event that his wife survived him and that he directed distribution of his estate to such brothers and sisters as might be living at the time of her death *only if she survived him*. While that may have been the testator's intent yet for us to add such a contingency would amount to an alteration or variation of the will as made. The fact that for a period of approximately 19 years, well aware that the factual situation contemplated in the will could not occur, testator did not change his will does not alter the situation. We are bound to construe this will according to its language. In expounding a will the question is not what the testator meant but rather what is the meaning of the words which he employed. That is not to say that a testator's meaning when apparent should

be disregarded. It does mean that we cannot reach the testator's intent by what he might have meant or even what under the changed circumstances he would have meant but only by what he said. In *Woelpper's Appeal,* supra, p. 572, the scope of our inquiry has been well defined: "The search is confined to [the testator's] language, but its object is still his meaning."

We cannot assume that the testator meant that the terms of the will would apply only in the event his wife survived him. Such a construction would amount to re-writing the testator's will. Under a proper construction of testator's last will, membership in the class to take his property was fixed as of the date of the wife-life tenant's death. At that time there were living but two sisters of the testator and each became entitled to share equally in testator's property at the time of his death.

The court below properly construed this will and properly directed distribution of the balance of the estate to the surviving sister, Savannah B. Paul, and the only child of the deceased sister, Mary E. Loreman.

Decree affirmed.

Costs on appellant.