277 F.2d 598
 Zella G. HOFFMAN and First National Bank & Trust Co. in Waynesboro, Executors of the Estate of Emmert D. Hoffman, Deceased, Appellants,
v.
Edgar A. McGINNES, District Director of Internal Revenue, Appellee.
 No. 12911.
 United States Court of Appeals Third Circuit.
 Argued November 5, 1959.
 Decided April 11, 1960.
 
 Henry D. O'Connor, Philadelphia, Pa., for appellants.
 Carter Bledsoe, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Meyer Rothwacks, Marvin W. Weinstein, Arthur I. Gould, Attys., Dept. of Justice, Washington, D. C., Harold K. Wood, U. S. Atty., Philadelphia, Pa., Sullivan Cistone, Asst. U. S. Atty., Bangor, Pa., on the brief), for appellee.
 Before McLAUGHLIN, KALODNER and HASTIE, Circuit Judges.
 KALODNER, Circuit Judge.
 
 
 1
 Was the appellant estate entitled to a marital deduction in respect to federal estate taxes under Section 2056(b) (5) of the Internal Revenue Code of 1954?[1]
 
 
 2
 The issue is presented by this appeal from the Order of the District Court granting summary judgment in favor of the District Director of Internal Revenue in an action for refund of federal estate taxes and interest paid following denial of the claimed marital deduction for property passing under the will of the decedent.
 
 
 3
 In brief summary, the decedent in his will created a trust which provided that his surviving wife was given the income from the trust estate for life and "the right to use and spend any or all of the principal of my said estate, if she so desires, and upon her request or requests made to * * * [trustees] they shall pay to her from time to time any part of the principal of my estate she may desire and said trust shall cease as to that part of the principal so paid to her." The will further provided: "It is my intention that my said wife * * * shall have the whole income and interest from my estate and use and spend any part or all of the principal that she may desire during her lifetime." In still another provision the balance remaining in the estate was to be paid to named remaindermen upon the death of the decedent's wife.
 
 
 4
 The District Court held that our decision in Commissioner of Internal Revenue v. Ellis' Estate, 3 Cir., 1958, 252 F. 2d 109 was "controlling in this situation" and that under Pennsylvania law, as construed in Ellis' Estate, the wife "does not possess the `unlimited powers to invade' to qualify for the marital deduction."[2]
 
 
 5
 Emmert D. Hoffman, the decedent, a resident of Pennsylvania, died testate on July 16, 1955, survived by his wife, Zella G. His will provided in pertinent part, as follows:
 
 
 6
 "Second. I give, devise and bequeath all of my property and estate, real, personal or mixed to my wife, Zella G. Hoffman, and the Waynesboro Trust Company, in trust, they to invest and reinvest the same and to pay the income and interest therefrom to my wife, Zella G. Hoffman, during the term of her natural life.
 
 
 7
 "In addition to the payment of said income and interest to my said wife during her lifetime, she is to have the right to use and spend any or all of the principal of my said estate, if she so desires, and upon her request or requests made to said Waynesboro Trust Company and Zella G. Hoffman, Trustees, they shall pay to her from time to time any part of the principal of my estate she may desire and said trust shall cease as to that part of the principal so paid to her.
 
 
 8
 "It is my intention that my said wife, Zella G. Hoffman shall have the whole income and interest from my estate and use and spend any part or all of the principal that she may desire during her lifetime.
 
 
 9
 "Third: Upon the death of my said wife, Zella G. Hoffman, I direct the balance remaining of my estate in the hands of said Trustees, after the payment of her debts and funeral expenses out of said fund, to be divided into two parts, one of which part, I give, devise and bequeath to my brothers and sisters, both of the whole and half blood, in equal shares, and the other one-half I give, devise and bequeath to the brothers and sisters of my wife, Zella G. Hoffman, in equal shares.
 
 
 10
 "At the time of the death of my said wife, if any of my brothers and sisters or her brothers and sisters be dead leaving issue, the share so given to that one is to be given to that issue and if any of them be dead leaving no issue, then the share which would go to that person, is to go to his or her brothers and sisters."
 
 
 11
 Mrs. Hoffman elected to take under the will. The executors of the estate filed an estate tax return deducting approximately one-half of the estate passing under the will to Mrs. Hoffman.[3] The deduction was premised on the theory that under the will Mrs. Hoffman was given a life estate with a power of appointment within the meaning of Section 2056(b) (5) of the 1954 Code and was therefore entitled to a marital deduction as there provided. The Commissioner of Internal Revenue denied the claimed deduction and assessed estate taxes in the amount of some $10,000. The assessment was paid by the executors and on the denial of their claim for refund they unsuccessfully sued for refund in the Court below.
 
 
 12
 On this appeal the executors urge that the provisions of the decedent's will (1) permitting Mrs. Hoffman "to use and spend any or all of the principal of my said estate, if she so desires", and (2) terminating the trust "as to that part of the principal so paid to her", vested Mrs. Hoffman with "a power of appointment" within the meaning of Section 2056(b) (5) of the 1954 Code. In making this contention the executors seek to distinguish Commissioner of Internal Revenue v. Ellis' Estate, supra, where it was held that a provision in the decedent's will authorizing the surviving wife's withdrawal from principal of such sums as she "should require" did not vest in her a power of appointment, since under Pennsylvania law the surviving wife "* * * under the terms of the will did not possess an `unlimited' power to invade the corpus or appoint the corpus to herself as unqualified owner", in view of the will's creation of "remainder" [252 F.2d 113] interests.
 
 
 13
 The grounds of distinction urged by the estate between Ellis' Estate and the instant case may be stated as follows: (1) In Ellis' Estate the will limited withdrawals from corpus to the amounts "required" whereas here there was an "unlimited" power of withdrawal since Mrs. Hoffman could expend from corpus amounts she "desired"; (2) here the will provided that the trust "shall cease as to that part of the principal so paid to her" and such provision was absent in Ellis' Estate, and (3) "the Ellis case was decided under the provisions of the old 1939 Revenue Code", and "The case at bar is under the 1954 Code, and the 1954 Code eliminated and struck out the old requirement that the widow's power be to appoint `free of the trust'."
 
 
 14
 In reply, the District Director contends that the facts in Ellis' Estate are "almost identical with those in the instant case" and that "the rationale of that decision is fully applicable herein"; further that the differences between the applicable provisions of the 1939 and 1954 Codes "are of no import for the purposes of this case."
 
 
 15
 Taking first the pertinent provisions of the 1954 Code:
 
 
 16
 Section 2056(b) (1) provides that no marital deduction will be allowed in cases where the surviving spouse has only a life estate or some other terminable interest.
 
 
 17
 Section 2056(b) (5), however, provides for a marital deduction if the surviving spouse has a life estate together with a "power * * * to appoint" which is "exercisable * * * in all events."
 
 It reads as follows:
 
 18
 "(b) Limitation in the case of life estate or other terminable interest. —
 
 
 19
 * * * * * *
 
 
 20
 "(5) Life estate with power of appointment in surviving spouse. — In the case of an interest in property passing from the decedent, if his surviving spouse is entitled for life to all the income from the entire interest, or all the income from a specific portion thereof, payable annually or at more frequent intervals, with power in the surviving spouse to appoint the entire interest, or such specific portion (exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not in each case the power is exercisable in favor of others), and with no power in any other person to appoint any part of the interest, or such specific portion, to any person other than the surviving spouse —
 
 
 21
 "(A) the interest or such portion thereof so passing shall, for purposes of subsection (a), be considered as passing to the surviving spouse, and
 
 
 22
 "(B) no part of the interest so passing shall, for purposes of paragraph (1) (A), be considered as passing to any person other than the surviving spouse.
 
 
 23
 "This paragraph shall apply only if such power in the surviving spouse to appoint the entire interest, or such specific portion thereof, whether exercisable by will or during life, is exercisable by such spouse alone and in all events."
 
 
 24
 Section 2056(b) (5) of the 1954 Code differs with Section 812(e) (1) (F) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 812(e) (1) (F), applicable in Ellis' Estate, in only these respects; it eliminated the requirements in the 1939 Code section that a life estate must be devised in trust and that the surviving spouse's right to income and power to appoint must extend to the entire interest in order for the marital deduction to be available to the estate. Accordingly, a marital deduction is available under the 1954 Code provision even though a decedent devised only a legal life estate to the surviving spouse with the right to income for life from a specific portion of the interest and further granted the power to appoint only a specific portion of the devised interest.[4]
 
 
 25
 We agree with the District Director's view that the differences stated between the 1939 and 1954 Code provisions "are of no import for purposes of this case."
 
 
 26
 The Treasury Regulations relating to the stated provisions of the 1939 and 1954 Codes differ materially only with respect to the changes made in those provisions by Section 2056(b) (5). On that score it may be noted while the Treasury Regulations on Estate Tax, Section 20.2056(b)-5(g) (1) (i) provide that the creation of a life estate together with an "unlimited power to invade" qualifies for the marital deduction under Section 2056(b) (5) of the 1954 Code, they further provide in part in Section 2056(b)-5(g) (3) as follows:
 
 
 27
 "A power [of appointment] is not considered to be a power exercisable by a surviving spouse alone and in all events * * * if it may be exercised for a limited purpose only * * *. Likewise, if there are any restrictions, either by the terms of the instrument or under applicable local law, on the exercise of a power to consume property (whether or not held in trust) for the benefit of the spouse, the power is not exercisable in all events. Thus, if a power of invasion is exercisable only for the spouse's support, or only for her limited use, the power is not exercisable in all events. In order for a power of invasion to be exercisable in all events, the surviving spouse must have the unrestricted power exercisable at any time during her life to use all or any part of the property subject to the power, and to dispose of it in any manner, including the power to dispose of it by gift (whether or not she has power to dispose of it by will)." (Emphasis supplied.)
 
 
 28
 In connection with what is said in the Treasury Regulations with respect to restrictions imposed by local law it is settled that while the federal revenue laws designate what interests or rights created by a testator are subject to tax that the determination of the specific legal interest or right that was created by the testator is solely dependent upon the law of the local jurisdiction.
 
 
 29
 We so held in Ellis' Estate, citing Helvering v. Stuart, 1942, 317 U.S. 154, 63 S.Ct. 140, 87 L.Ed. 154 and Morgan v. Commissioner, 1939, 309 U.S. 78, 626, 60 S.Ct. 424, 84 L.Ed. 585, 1035.
 
 
 30
 Since Pennsylvania law applies here we must look to that law in resolving the issue presented by this appeal, to wit, whether the will under review conferred a power of appointment on Mrs. Hoffman.
 
 
 31
 As early as Fox's Appeal, 1882, 99 Pa. 382, at page 386, Chief Justice Sharswood enunciated the cardinal rule in effect in Pennsylvania that:
 
 
 32
 "Every will is to be construed from its four corners to arrive at the true intention of the testator. Decisions upon other wills may assist, but cannot control the construction." (Emphasis supplied.)
 
 
 33
 The rule was recently re-stated in Saunders Estate, 1958, 393 Pa. 527, at page 529, 143 A.2d 367, at page 368, as follows:
 
 
 34
 "The testator's intention is the pole star in the construction of every will and that intention must be ascertained from the language and scheme of his will; it is not what the Court thinks he might or would or should have said in the existing circumstances, or even what the Court thinks he meant to say, but what is the meaning of his words (citing cases)." (Emphasis supplied.) In Metzgar Estate, 1959, 395 Pa. 322, at page 325, 148 A.2d 895, at page 897 it was held that a rule of construction "* * * must yield to the actual intent of a testator if the expression of such intent can be garnered from the language of the will."
 
 
 35
 Applying the principles stated to the decedent's will in the instant case we think it is clear the testator gave to Mrs. Hoffman an "unrestricted power exercisable at any time during her life to use all or any part of"[5] the principal of the trust estate within the meaning of Section 2056(b) (5) of the 1954 Code.
 
 
 36
 In support of our view we point to the provisions in the second paragraph of the second clause of the decedent's will in which Mrs. Hoffman was given "the right to use and spend any or all of the principal of my estate, if she so desires, and upon her request or requests made to said Waynesboro Trust Company and Zella G. Hoffman, Trustees, they shall pay to her from time to time any part of the principal of my estate she may desire and said trust shall cease as to that part of the principal so paid to her", and the third paragraph in this same clause which provided: "It is my intention that my said wife, Zella G. Hoffman shall have the whole income and interest from my estate and use and spend any part or all of the principal that she may desire during her lifetime." (Emphasis supplied.)
 
 
 37
 It would be difficult, if not impossible, to state any more explicitly an intent to confer "an unrestricted power exercisable at any time during her life to use all or any part of" the principal of the decedent's trust estate.
 
 
 38
 Further, the provision that "said trust shall cease as to that part of the principal so paid to her" was clearly intended as a "cut-off" of the right of remainder interests to the extent of the principal "used" by Mrs. Hoffman.
 
 
 39
 This provision, alone, distinguishes the instant case from Ellis' Estate where we stressed the fact (252 F.2d at page 113) "that Mrs. Ellis under the will, as the surviving spouse, was not given the power to appoint the entire corpus free of the trust" (emphasis supplied). Here, the power to appoint "free of the trust" was made explicit by reason of the provision that "said trust shall cease as to that part of the principal so paid to her." Thus, even under the 1939 Code provision that the power of appointment must be free of the trust (the provision was eliminated by the 1954 Code) what was said in Ellis' Estate on this score is not applicable here.
 
 
 40
 The provision that "said trust shall cease as to that part of the principal so paid to her", operating as it did to effect the right of remainder interests designated in the decedent's will, is significant for still another reason.
 
 
 41
 The rationale of the Pennsylvania decisions, cited in Ellis' Estate, limiting a life tenant's withdrawals from principal, is the judicial safeguarding of remainder interests to assure compliance with the testator's intent as to such interests.
 
 
 42
 The Pennsylvania doctrine was clearly enunciated in Watson's Estate, 1913, 241 Pa. 271, at page 280, 88 A. 433, at page 436, where it was said:
 
 
 43
 "* * * the court can only interfere to protect the remaindermen when the widow attempts to divert the fund from the purpose for which it was bequeathed her."[6] (Emphasis supplied.)
 
 
 44
 In the case at bar the testator specifically "diverted" from the remainder interests such withdrawals from corpus as might be "desired" for her "use" by Mrs. Hoffman when he directed that "said trust shall cease as to that part of the principal so paid to her" and the courts could not by application of any canon of construction nullify such directions in the will.
 
 
 45
 Before the turn of the century it was settled in Pennsylvania, in Redding v. Rice, 1895, 171 Pa. 301, 306, 33 A. 330, 331, that:
 
 
 46
 "Neither precedents nor rules of construction can override the testator's expressed intent." (Emphasis supplied.)
 
 
 47
 The rule stated was cited and applied in Metzgar Estate, supra, 395 Pa. at page 328, 148 A.2d at page 898. This case, as earlier noted, was decided just a year ago and is the most recent reported expression of the Supreme Court of Pennsylvania on the "rule of construction" of wills.
 
 
 48
 Apropos of the District Court's reliance on Ellis' Estate as being dispositive here it is pertinent to note the observations made in Metzgar Estate with respect to cases which were cited to the Court there as "precedents". Said the Court (395 Pa. at page 327, 148 A.2d at page 898):
 
 
 49
 "An examination of these cases well illustrates that which was said in Long's Estate, 270 Pa. 480, 487, 113 A. 675, 677: `* * * precedents are of little value in the construction of wills, because, when used under different circumstances and with different context, the same words may express different intentions. When the intent of the testator, and by that is meant his actual intent, can be fairly gathered from his words, the fact that another testator had used the same words with a different meaning is of no avail. * * *'"
 
 
 50
 Adverting to the last stated proposition that "precedents are of little value in the construction of wills", we are of the opinion that Ellis' Estate is not dispositive of the issue presented by this appeal, because in Ellis' Estate withdrawals from principal were only authorized as "required" while here they were authorized as "desired" and further, here there was the critical provision, absent in Ellis' Estate, that "the trust shall cease as to that part of the principal so paid to her."
 
 
 51
 Of interest are the following Pennsylvania Orphans' Court cases:
 
 
 52
 In Keen Estate, 1951, 80 Pa.D. & C. 377, Orphans' Court of Montgomery County, the will contained this provision:
 
 
 53
 "My trustees shall pay the net income in monthly or other convenient installments to my wife * * * during her lifetime, and in addition such sum or sums from principal as she shall from time to time in writing request * * *." (Emphasis supplied.)
 
 
 54
 The testator was survived by his wife and a son. The wife made a written request to the trustees for "payment to her of the entire balances of principal * * *."
 
 The Court held (at page 378):
 
 55
 "* * * Her request, which is in the form prescribed by the will must be complied with, and the entire balance * * * is awarded to Alice H. Keen."
 
 
 56
 In its opinion the Court stated (at page 378):
 
 
 57
 "In Scott on Trusts, § 128.3, Discretionary Trusts, it is stated at page 671:
 
 
 58
 "`By the terms of the trust it may be provided that the trustee shall pay the life beneficiary so much of the principal as the life beneficiary may request him to pay. In such case the amount to which the life beneficiary is entitled depends wholly upon his own desires, and the trustee has no discretion to withhold any part of the principal which the life beneficiary requests should be paid him.'" (Emphasis supplied.)
 
 
 59
 In Cornman's Estate, 2 Lebanon County Legal Journal 334 (1950), Orphans' Court of Cumberland County, the will contained this provision: "* * * I hereby give and bequeath the income from all my properties both real and personal to my wife * * * while she lives with the privilege at any time of disposing of any or all real estate."
 
 
 60
 The will also named remainder charities upon the death of the surviving wife.
 
 
 61
 The widow transferred the real estate to a third person who declared a trust with respect to it in her favor with a remainder over to two other persons upon the widow's death. Counsel for the remainder charities contended that the widow was not granted "a power of appointment" under the will and could not make the conveyance earlier referred to but the Court held to the contrary stating (p. 343):
 
 
 62
 "The privilege of disposing of real estate at any time certainly creates in the donee a power of appointment and where as here that power is unrestricted the disposition may be either by sale or gift * * *."
 
 
 63
 In Arrott's Estate, 1939, 36 Pa.D. & C. 546, Orphans' Court of Philadelphia County, the will provided for an annuity of $5,000 for the decedent's son after the death of his mother, decedent's widow. It further contained this provision:
 
 
 64
 "In Trust, to sell and dispose of such part of the principal of my estate, real and personal * * * which my wife * * * may, during her lifetime, in writing direct or require, and to pay over the proceeds thereof to her, if she shall so require, for her sole and separate use, her individual receipt therefor to be a sufficient discharge for my said Trustees."
 
 
 65
 After sustaining the finding of the auditing judge that the word "require" in the phrase "in writing direct or require" was synonymous with "direct", and was not used as the equivalent of "need", the Court held (at page 548):
 
 
 66
 "The remaining exceptions relate to the circumstance that the power of the widow to consume principal of the estate may run to such an extent that there will not be retained an amount necessary to pay the annuity of $5,000 to testator's son, after his widow's death. It is argued that where two dominant purposes in a will are compatible the will should be so construed as to give effect to both of the dominant purposes. In the present case, the authority given the widow to demand payment of principal is so unmistakable as to prevail over the intent to maintain the annuity for the son." (Emphasis supplied.)
 
 
 67
 Of significant interest here is the case of In re Estate of George M. Morriss, Orphans' Court of Dauphin County, 1922, 26 Dauph.Co. 137, where the will created a trust as to all of the decedent's estate, and, after providing for payment of its entire income to the decedent's sister during her life and creating remainder interests in favor of her children upon her death, and certain charities, in default of issue, stated:
 
 
 68
 "Provided always nevertheless should my said sister desire money in excess of any income herein bequeathed her I direct my executor and trustee herein named to pay to my said sister for her sole and separate use from time to time such sum or sums of money as she shall demand of the principal of my estate for which her receipt shall be a sufficient acquittance." (Emphasis supplied.)
 
 
 69
 Several months after the decedent's death the sister wrote to the executor and trustee of the estate as follows:
 
 
 70
 "This is to give you notice that I do demand of you * * * to transfer, assign, convey, setover and deliver unto me * * * all of the net estate of the * * * deceased, wheresoever the same may be and of whatever character the same may be constituted.
 
 
 71
 "The purpose of this demand is that I may become the sole owner in fee, and have entire and full control of, all of the real and personal property constituting the net estate of the * * * deceased."
 
 
 72
 The holding of the Court was that the sister was "lawfully entitled to the whole of the estate, real, personal and mixed absolutely," and the executor and trustee was ordered to convey the entire estate to her.
 
 
 73
 In its opinion the Court stated (at pages 140-141):
 
 
 74
 "The question here is: are the life estate and the remainder as created by the will defeasible by the exercise of the power placed in the sister under the provisions of this instrument? There are no cases on all fours with this to which we have been referred, nor which we have found, nor are there strict rules by which we are to be guided in this case except that one viz: `In the construction of a will, the clear, general and controlling rule is, that the intent of the testator shall prevail, and by his intent is meant his actual intent.' Woelpper's Appeal: 126 Pa. 562 [17 A. 870], and the doctrine as laid down in the case of Allen v. Hirlinger: 219 Pa. [56] at page 58 [67 A. 907, 13 L.R.A.,N.S., 458]: `as the first donee is usually the principal object of the testator's bounty the presumption in case of conflict is always in his favor.'
 
 
 75
 "This case is distinguished from the long line of cases in which the testators carved out life estates and remainders with powers in the first takers to diminish and consume for their support and maintenance with gift over of the unconsumed part at the death of the first taker, some of which are: Tyson's Estate: 191 Pa., 218 [43 A. 131]; Dickinson's Estate: 209 Pa., 59 [58 A. 120]; Watson's Estate: 241 Pa., 271 [88 A. 433]; wherein this rule has been laid down: `The test in all such cases is the good faith of the action of the beneficiary. If it is an honest exercise of the discretion with which the testator has clothed him, his action is conclusive, but he cannot be permitted to make use of the mere form to defeat or evade the true intent and pervert the gift to a different purpose.' But in the case before us the income is not given to the beneficiary for her support or maintenance, it is given to her for her sole and separate use, and any money to be paid to her in excess of any income bequeathed is not to be paid to her for maintenance or support but for her sole and separate use. The gift to her is unqualified; she may use it for whatever purposes she sees fit and do with it as she pleases; there is no limitation upon her desire nor upon her demand and appropriation, but there is a plain command that the executor and trustee shall pay to her for her sole and separate use, from time to time such sum or sums of money as she `should desire' and `shall demand' of the principal of the estate." (Emphasis supplied.)
 
 
 76
 The relevant provisions in the will in the Estate of George M. Morriss are virtually on all fours with those in the instant case. There has not been cited to us, nor can we find after intensive research, any instance where similar provisions were construed by a Pennsylvania appellate court. Accordingly we are permitted to look to the Morriss case as a guide in the difficult problem of ascertaining how the Pennsylvania appellate courts would rule on the issue as to whether the will in the instant case vested Mrs. Hoffman with a power of appointment within the meaning of the 1954 Code.
 
 
 77
 The sum of our review of the record and the Pennsylvania decisions is that the Pennsylvania courts would accord to Mrs. Hoffman a power of appointment entitling the estate to a marital deduction within the meaning of Section 2056(b) (5) of the Internal Revenue Code of 1954, and accordingly we are of the opinion that we must so hold.
 
 
 78
 In doing so we are of the view that Commissioner of Internal Revenue v. Ellis' Estate, supra, is inapposite by reason of the difference between the factual circumstances there and the factual circumstances in the instant case, and that the District Court erred in finding to the contrary and holding Ellis' Estate to control here.
 
 
 79
 For the reasons stated the Order of the District Court granting summary judgment in favor of the District Director of Internal Revenue will be reversed and the cause remanded to proceed in accordance with this opinion.
 
 
 
 Notes:
 
 
 [1]
 26 U.S.C.A. § 2056(b) (5)
 
 
 [2]
 The District Court's Memorandum Opinion is unreported
 
 
 [3]
 There were no children
 
 
 [4]
 The Technical Amendments Act of 1958, P.L. 85-866, 72 Stat. 1606, approved September 2, 1958, Sections 93(a) and (b), retroactively amended Section 812(e) (1) (F) so as to make the provisions contained in Section 2056(b) (5) applicable to estates of decedents who died subsequent to April 1, 1948, 26 U.S.C.A. §§ 812(e) (1) (F), 812 note
 
 
 [5]
 Treasury Regulations 2056(b)-5(g) (3)
 
 
 [6]
 This holding was cited with approval, by reference to it, in Powell's Estate, 1941, 340 Pa. 404, 411, 17 A.2d 391